

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIVAS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 06 C 3566 |
| ) | |
| THE BOEING COMPANY, ) | Consolidated with |
| a corporation; UNITED TECHNOLOGIES ) | |
| CORPORATION, a corporation, individually ) | No. 06 C 3567 |
| and doing business as PRATT & WHITNEY; ) | No. 06 C 3568 |
| and TRANSPORTE AEREOS NACIONAL ) | No. 06 C 4437 |
| DE SELVA, S.A., a sociedad anonima, ) | No. 06 C 4565 |
| ) | No. 06 C 6807 |
| Defendants. ) | No. 07 C 0683 |

## **MEMORANDUM OPINION AND ORDER**

This is a tort case arising out of a plane crash in Peru. Plaintiffs[1] filed seven different complaints in the Circuit Court of Cook County against defendants the Boeing Company ("Boeing"), United Technologies Corporation ("UTC"), and Transporte Aeros Nacional de Selva, S.A., also known as Aerolinea TANS Peru ("TANS"),[2] which have each been removed and consolidated before this court. Plaintiffs have moved to remand. Dkt. No. 12 (July 27, 2006), Dkt. No. 50 (Dec. 28, 2006). For the following reasons, plaintiffs' motions to remand are granted for those cases in which TANS is not a named defendant due to the lack of federal question and diversity jurisdiction.

---

[1] There are approximately 30 plaintiffs in this consolidated case. Most are citizens of Peru and the remainder are citizens of New York.

[2] Plaintiffs in the Rengifo (06 C 4437) and Rojas de Moral (06 C 4565) cases have not sued TANS.

TANS Peru Flight 204 was on its approach to landing en route from Lima, Peru to Pucallpa, Peru when it crashed into the ground. Boeing's Answer to Vivas Complaint, at ¶ 13. TANS was operating the plane. TANS's Memorandum in Support of its Motion to Dismiss, Dkt. No. 55 (Jan. 23, 2007), at 1. Plaintiffs allege that Boeing designed, manufactured, and sold the plane, Vivas Complaint, at ¶ 6, and that UTC manufactured and assembled its engines. Vivas Complaint, at ¶ 8. In their complaints, plaintiffs include counts of products liability and negligence against both Boeing and UTC, and a count of negligence against TANS. They allege that the plane failed to adequately deflect precipitation, was incapable of safe flight in tropical environments, contained a faulty engine re-light system and windshear detection system, and that Boeing and UTC failed to give adequate instructions and warnings regarding these conditions. Plaintiffs' Memorandum in Support of their Motion to Remand, Dkt. No. 12 (July 27, 2006), at 3-4; *see generally* Vivas Complaint. They also argue that TANS negligently trained its pilots, failed to operate the plane in accordance with instructions, and failed to maintain the plane, and generally that all defendants violated the duty of care owed to the plaintiffs. *Id.*

Boeing is a Delaware corporation with its corporate headquarters in Illinois. Boeing's Answer to Vivas Complaint ("Boeing's Answer"), at ¶ 1. UTC is a Delaware corporation with its principal place of business in Connecticut. UTC's Answer to Vivas Complaint ("UTC's Answer"), at ¶ 4. TANS is a limited liability company organized under the laws of Peru with its principal place of business in Peru.[3] Boeing's Answer, at ¶ 2.

---

[3] More information about TANS can be found in its motion to dismiss. Dkt. No. 55 (Jan. 23, 2007).

I.  Standard

A case can be removed from state to federal court if it is within the original jurisdiction of the federal courts. 28 U.S.C. §§ 1441, 1331, 1332. For federal question jurisdiction under § 1331, the analysis begins with the "well pleaded complaint rule," which requires federal courts to determine whether a federal question is presented on the face of a plaintiff's properly pleaded complaint. *XL Specialty Co. v. Village of Schaumburg*, 2006 WL 2054386, at *1 (N.D. Ill. July 20, 2006) (citing *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 402 (7th Cir. 2001)); *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992). In some situations, however, "a federal court may look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law. In these cases, [courts] will conclude that a plaintiff's claim arose under federal law and is therefore removable." *Burda*, 954 F.2d at 438. Nevertheless, "[t]he burden of establishing federal jurisdiction falls on the party seeking removal, and any doubt regarding jurisdiction should be resolved in favor of remand." *XL Specialty*, 2006 WL 2054386, at *1 (citing *Doe v. Allied Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).

II.  Federal Question Jurisdiction

Plaintiffs state in their memorandum, "Absent the presence of a 'substantial federal issue' embedded within the plaintiff's state-law cause of action, the Supreme Court has recognized 'only two circumstances' in which a state law claim may be removed to federal court: when Congress expressly so provides or when a federal statute wholly displaces the state-law cause of

action through complete preemption." Plaintiffs' Mem., Dkt. No. 12, at 3 (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003)).

Both parties recognize that the Supreme Court's recent clarification of federal question jurisdiction in *Grable & Sons v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005), is relevant to this case. *Grable* reaffirmed that federal courts' federal question jurisdiction includes claims that are created by federal law *as well as* state law claims that implicate "significant federal issues." *Grable*, 545 U.S. at 312 (emphasis added). The Court framed the appropriate inquiry as follows: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?" *Id.* at 314.

*Grable* was a quiet title action in which the plaintiff alleged that the defendant, who had purchased the plaintiff's property in a tax sale, received an invalid title because the Internal Revenue Service ("the IRS") had failed to comply with a notice requirement of the federal tax statute. *Id.* at 310. The Court held that the defendant had properly removed the case, reasoning that the IRS's compliance with federal tax law was an essential element of the plaintiff's quiet title claim, despite the fact that the claim was one of state law. *Id.* at 315. It noted that the federal government has a strong interest in the interpretation and enforcement of the tax statute and in the availability of a federal forum to vindicate its action. *Id.* Additionally, allowing federal jurisdiction would not upset the division of labor between federal and state courts, because it is the rare quiet title case that involves a contested issue of federal law. *Id.*

4

The Supreme Court distinguished *Grable* from *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986), a case which plaintiffs here argue is more analogous to theirs than *Grable* is. *Merrell Dow* was a tort case concerning the drug Bendectine in which the plaintiffs alleged common law theories of negligence, breach of warranty, strict liability, fraud, and gross negligence, and a final count alleging that the product failed to warn the consumer as required under federal labeling law, which "misbranding" constituted a rebuttable presumption of negligence under Ohio law. 478 U.S. at 805.

Noting that the significance of the lack of an explicit or implied right of action for violation of the federal statute could not be overstated, the Court rejected the notion that "federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law . . . ." *Id.* at 812. The Court in *Grable* distinguished *Merrell Dow* by pointing out that "*Merrell Dow* disclaimed the adoption of any bright-line rule," such as the absence of a federal right of action, 545 U.S. at 317, but rather emphasized the need for "contextual inquiry," *id.* at 318, and noted that in *Merrell Dow* it had treated "the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." *Id.* In plain English, a contrary decision would have shifted a tremendous number of state claims with embedded federal issues into federal court.[4]

---

[4]"For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases." 545 U.S. at 318.

5

Defendants argue that their case is more like *Grable* than *Merrell Dow* because plaintiffs will have to prove, as the central element of each of their tort claims, that the defendants failed to comply with the standards prescribed by the Federal Aviation Administration ("the FAA") in its Federal Aviation regulations issued under the Federal Aviation Act, 49 U.S.C. § 40101 *et seq.* ("the FARs"), including 14 C.F.R. § 33.69 (regarding the ignitions system), 14 C.F.R. § 33.78 (regarding rain and hail ingestion), and 14 C.F.R. § 91.13(a) (stating a general standard of care: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."). Defendants explain that the FARs preempt the state tort law standards of care in the area of aviation safety. Therefore, the plaintiffs' products liability and negligence claims will turn on the interpretation and application of the federal standards instead of the state law standard of ordinary care or strict liability. Boeing's Opposition to Plaintiffs' Motions to Remand as to Federal Question Jurisdiction, Dkt. No. 29 (Sept. 26, 2006) ("Boeing's Opposition"), at 1; *cf. Hamilton v. Fink*, 201 Ill. App. 3d 81, 84, 559 N.E.2d 278, 279 (Ill. App. Ct. 1990) ("A determination of whether conduct is negligent is a composite of the experiences of the average person, and is left to the jury for evaluation."); *Sorce v. Naperville Jeep Eagle, Inc.*, 722 N.E.2d 227, 237, 309 Ill. App. 3d 313, 327 (Ill. App. Ct. 1999) ("Illinois has long applied the concept of strict tort liability set out in section 402A of the Restatement (Second) of Torts (1965) to products liability cases.").

It is plain enough that federal law occupies the field of air transportation safety, and in that sense "preempts" state law. *E.g., Bieneman v. City of Chicago*, 864 F.2d 463, 473 (7th Cir. 1988) (recognizing that federal law preempts the regulation of safety in air travel but holding that Illinois common law remedies that enforce federal requirements or regulate aspects of airport

6

operation over which the state has discretionary authority are not preempted). The same is true of pharmaceutical safety, at issue in *Merrell Dow*.

Both *Merrell Dow* and *Grable* entailed plaintiffs without a federal right of action and situations where federal law was "embedded" in their claims. The distinction between the two cases is best identified as the conclusion that because *Grable* was "the rare state quiet title action" that turned solely on the interpretation of a disputed issue of federal law (proper notice under a provision of the Internal Revenue Code), federal jurisdiction over such a case "would not materially affect, or threaten to affect, the normal currents of litigation," 545 U.S. at 319, and therefore there was no good reason to "shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim." Id. at 319-20. The Court emphasized that it was not merely that federal law applied, but there was "an actual dispute about federal law." 545 U.S. at 316 n.3, 319.

This reading of *Grable*, however, does not augur well for defendants here, for although federal law shapes the standard of care, there is no known actual and substantial dispute about the interpretation of federal law that will control the outcome of this case. Rather, this case fits the court's remark in *Bieneman*, "State courts award damages every day in air crash cases, notwithstanding that federal law preempts the regulation of safety in air travel." *Bieneman*, 864 F.2d at 471. Further, it is quite apparent that if this is a case for federal question jurisdiction, the "congressionally approved balance of federal and state judicial responsibilities" would certainly be disturbed.[5]

---

[5] On November 2, 2002, Congress enacted Pub. L. No. 107-273, § 11020(c), 116 Stat. 1829, (codified at 28 U.S.C. § 1369), which granted to federal courts original jurisdiction of any civil action
(continued...)

District courts that have addressed this question after *Grable* have gone different ways, but most cases have agreed with the conclusion reached here. *E.g., Saavedra v. The Boeing Co.*, 464 F. Supp. 2d 770 (N.D. Ill. 2006) (arising from the instant accident and *sua sponte* remanded for lack of subject matter jurisdiction); *XL Specialty v. Village of Schaumburg*, 2006 WL 2054386, at *3 (N.D. Ill. July 20, 2006) (where plaintiff alleged negligence based on ten alternative theories, one of which was an alleged breach of a duty of care set forth in the FAA, defendant's reliance on FAA Advisory Circular as an alternate basis to supply a duty of care does not create a substantial federal question); *Yarbrough v. Avco Corp.*, 2006 WL 2946447 (M.D. Tenn. Oct. 10, 2006) (products liability claims arising out of a plane crash remanded where the FAA had certified the airworthiness of the aircraft, and where no party contested the meaning of the federal regulations at issue); *Wicksell v. Bombardier Corp.*, 2006 WL 3483472, at *4 (S.D. Fla. Oct. 6, 2006) (plaintiffs alleged products liability and negligence arising out of a plane crash remanded where, "[a]lthough violation of federal law may constitute evidence of negligence under state law, the presence of such a federal issue has not been considered sufficiently 'substantial' to warrant the exercise of federal jurisdiction."); *Glorvigen v. Cirrus Design Corp.*, 2006 WL 399419 (D. Minn. Feb. 16, 2006) (claims of negligence, breach of warranty, and products liability arising from plane crash remanded because "Congress failed to provide a federal cause of action and failed to preempt state remedies when enacting the FAA--strongly indicating that Congress did not intend to create a substantial federal question over cases

---

[5](...continued)
involving "minimal diversity" between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location, and certain other conditions are met. Although this is an expansion of federal jurisdiction, Congress appears to retain the conception that not all airplane crash cases have an independent basis for federal court jurisdiction.

8

implicating the FAA and FARs."); *Sarantino v. American Airlines, Inc.*, 2005 WL 2406024 (E.D. Mo. Sept. 29, 2005) (plaintiff's negligence claims arising out of a plane crash remanded as not presenting federal question under *Grable* analysis); *Wandel v. American Airlines*, 2005 WL 2406017 *8 (E.D. Mo. Sept. 28, 2005) ("this case more closely resembles *Merrell Dow*, rather than *Grable & Sons*"). See also *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 376 (3rd Cir. 1999) (ruling that federal law establishes the applicable standards of care in the field of air safety, completely preempting the entire field from state and federal regulation; nevertheless, state tort remedies are not barred).

A minority of cases have come to the opposite conclusion of these cases and the conclusion the court reaches here. *Bennett v. Southwest Airlines Co.*, 2006 WL 1987821 (N.D. Ill. July 13, 2006) (Kocoras, J.) (plaintiffs alleged claims of products liability and negligence arising out of a plane crash that occurred during landing); *Curtin v. Port Authority of New York*, 183 F. Supp. 2d 664 (S.D.N.Y. 2002) (plaintiff alleged that defendants negligently conducted an emergency evacuation of an airplane at an airport). The district court in *Bennett* certified and the Seventh Circuit has accepted the case for interlocutory appeal under 28 U.S.C. § 1292(b) on the basis that it involved a controlling question of law as to which there is substantial ground for difference of opinion.

Although there is certainly room for a respectful difference of opinion on this issue, this court is satisfied that unless the Seventh Circuit changes direction in *Bennett* or another case in the light of *Grable*, this case does not contain a state law claim that raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

9

III. Diversity Jurisdiction

Boeing alternatively argues that its removal was proper because there is diversity jurisdiction in this case. Boeing's Opposition to Plaintiffs' Motions to Remand as to Diversity Jurisdiction, Dkt. No. 30 (Sept. 26, 2006) (hereinafter, "Boeing's Opposition"). In the *Rengifo* and *Rojas de Moral* cases, 06 C 4437 and 06 C 4565, the plaintiffs are citizens of Peru, defendant Boeing is a Delaware corporation with its headquarters in Illinois, and defendant UTC is a Delaware corporation with its headquarters in Connecticut. *Id.* at 2; Boeing's Answer, at ¶ 1; UTC's Answer, at ¶ 4.[6] There is no dispute that the amount in controversy is at least $75,000.00. Boeing's Opposition, at 3. Therefore, the requirements of 28 U.S.C. § 1332 are satisfied.

Because diversity cases are within the original jurisdiction of the federal courts, they are generally removable. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, *any civil action brought in a State court of which the district courts of the United States have original jurisdiction,* may be removed by the defendant or the defendants) (emphasis added). If a named defendant is a citizen of the forum state and has been served, however, the case is not removable on the basis of diversity jurisdiction. 28 U.S.C. § 1441(b).[7] Boeing is a

---

[6] In each of the other consolidated cases, plaintiffs have sued TANS. The addition of TANS destroys complete diversity in those cases because TANS is a limited liability company organized under the laws of Peru with its principal place of business in Peru, Boeing's Answer, at ¶ 2, and some plaintiffs are also citizens of Peru. *Intec U.S.A., LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006) (presence of citizens of New Zealand on both sides of the case destroyed complete diversity).

[7] The text of 28 U.S.C. § 1441(b), with emphasis added, is the following:

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.
(continued...)

citizen of this court's forum state, but filed its notices of removal in *Rengifo* and *Rojas de Moral* before it or any other defendant was served.[8] Boeing's Opposition, at 3. The question before the court now is whether Boeing can avoid the forum defendant limit on diversity jurisdiction through its strategic move of early removal.

In the 2005 case of *Holmstrom v. Harad*, 05 C 2714, 2005 WL 1950672, at *1 (N.D. Ill. Aug. 11, 2005) (Aspen, J.), which has been appealed to the Seventh Circuit, Dkt. No. 25 (Sept. 8, 2005), the plaintiff filed a case in the Circuit Court of Cook County against several defendants, including two Illinois defendants. Before any defendant had been served, an Ohio defendant filed a notice of removal, arguing that because the Illinois defendants had not yet been served, removal was proper under Section 1441(b). *Id.*, at *1. Judge Aspen recognized that "an unserved forum defendant will generally not defeat removal" according to the "joined and served" requirement in Section 1441(b). *Id.* at *1-2 (citing *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001); *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 180-81 (S.D.N.Y. 2003); *Ott v. Consol. Freightways Corp.*, 213 F. Supp. 2d 662, 665 (S.D. Miss.

---

[7](...continued)
Any other such action [including diversity actions] shall be removable *only if none of the parties in interest <u>properly joined and served as defendants</u> is a* citizen of the State in which such action is brought."

[8] A defendant may remove before being served with formal process. 28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading ...."); *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529-30 (7th Cir. 2004).

2002); *Maple Leaf Bakery v. Raychem Corp.*, No. 99 C 6948, 1999 WL 1101326, at *1 (N.D. Ill. Nov. 29, 1999)).[9]

The rationale for the joined and served requirement is "to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve." *Id.* at *2. Judge Aspen found that this policy was not implicated in a case where none of the defendants had yet been served, and the clock was not yet running on their time limit for removing the case. *Id.* Therefore, the protection of the non-resident defendants' rights to remove the case was unnecessary, and Judge Aspen declined to apply it and remanded the case. *Id.*

"When interpreting statutes, first and foremost, we give words their plain meaning unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." *United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006); *see also Nixon v. Mo. Municipal League*, 541 U.S. 125, 138, 124 S. Ct. 1555,

---

[9] In each of these cases, the removing defendants had been served or had voluntarily appeared. *See also Test Drilling Serv. Co. v. Hanor Co.*, 322 F. Supp. 2d. 953, 955-57 (C.D. Ill. 2004); *In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002). In contrast, none of the *Holmstrom* defendants had appeared or been served, 2005 WL 1950672, at *1, and Judge Aspen distinguished his case on that basis. He cited *Recognition Comm'ns v. Am. Auto. Ass'n, Inc.*, 1998 WL 119528, at *3 (N.D. Tex. Mar. 5, 1998), which arrived at the same result as he did, albeit using a different rationale: that where no defendants have been served, all defendants must join in a notice of removal. In the recent case of *Massey v. Cassens & Sons, Inc.*, 2006 WL 381943, at *1 (S.D. Ill. Feb. 16, 2006), however, the Court confronted another situation in which none of the defendants had yet been served and a non-resident defendant removed the case. The Court cited and considered *Holmstrom*, but determined that it could not justify going against the plain language of § 1441(b) and remanded the case on that basis. *Id.* at *2-*3. Similarly, *Frick v. Novartis Pharmaceuticals Corp.*, 2006 WL 454360, at *1 (D.N.J. Feb. 23, 2006), dealt with a case in which the sole named defendant was a citizen of the forum state but filed its notice of removal before being served. *Frick* also noted *Holmstrom* and its policy considerations but it too declined to go against the plain language of the statute. *Id.* at *3.

1996)). Therefore, the court declines to apply § 1441(b) to permit Boeing to remove these cases based on diversity jurisdiction.

IV. Conclusion

For the foregoing reasons, the plaintiffs' motions to remand [#12, #50] are granted under 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. The Clerk is directed to remand the *Rengifo* case (06 C 4437) and the *Rojas de Moral* case (06 C 4565) to the Circuit Court of Cook County. This case will be called for status on March 15, 2007.[10]

Dated: March 12, 2007

ENTER:

_____
JOAN HUMPHREY LEFKOW
United States District Judge

---

[10] In a supplemental memorandum recently filed in support of their motion to remand UTC, plaintiffs raise for the first time an alleged procedural defect in defendants' removal: UTC's failure to file a written consent to Boeing's notice of removal. Dkt. No. 81 (Feb. 20, 2007). Because Boeing's notice of removal was filed June 30, 2006, and briefing on plaintiffs' motion to remand was complete on October 10, 2006, plaintiffs have waived this objection. *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir. 1997).

14

1564, 158 L. Ed. 2d 291 (2004). In this case, Boeing's interpretation of the removal statute would frustrate the consistent efforts of both Congress and the courts to determine diversity jurisdiction based on the genuine interests of the parties to the controversy. *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) (citing *Rose v. Giamatti*, 721 F. Supp. 906, 913 (S.D. Ohio 1989) (citations omitted) (reviewing the doctrine of fraudulent joinder and the "long-established doctrine that a federal court, in its determination of whether there is diversity of citizenship between the parties, must disregard nominal or formal parties to the action and determine jurisdiction based only upon the citizenship of the real parties to the controversy."); *see also* 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure Juris. 3d § 3723 (2007).

Combining the permission granted in 28 U.S.C. § 1446(b) for defendants to file a notice of removal before being served with the joined and served requirement of 28 U.S.C. § 1441(b) to allow a resident defendant to remove a case before a plaintiff even has a chance to serve him would provide a vehicle for defendants to manipulate the operation of the removal statutes. Allowing either party to do that would be against what the courts have long understood to be Congress's intent. Furthermore, the court is mindful of the admonition that "[t]he removal statute should be construed narrowly and any doubts about the propriety of removing a particular action should be resolved against allowing removal." *Wirtz Corp. v. United Distillers & Vintners NA, Inc.*, 224 F.3d 708, 715-16 (7th Cir. 2000) (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Illinois v. Kerr-McGee Chem. Corp.*, 677 F.2d 571, 576 (7th Cir. 1982); *Shamrock Oil & Gas Co. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941); *In re Application of County Collector of the County of Winnebago*, 96 F.3d 890, 895 (7th Cir.